IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARLON HUDSON, | ) | CASE NO. 1:13 CV 590 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| CHRISTOPHER LaROSE, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    A.    Background facts, plea, conviction, and sentence . . . . . . . . . . . . . . . . . . -4-
    B.    Direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
        1.    Ohio court of appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
        2.    Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
        3.    Post-conviction motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
            a.    Motions regarding payment of fines from inmate account
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
            b.    Motion for relief from judgment . . . . . . . . . . . . . . . . . . . -9-
            c.    Motion to void judgment . . . . . . . . . . . . . . . . . . . . . . . . . -9-
        4.    Federal habeas petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
    B.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
        1.    Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
        2.    AEDPA review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
    C.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
        1.    Ground four – disproportionate sentence – should be dismissed as non-
            cognizable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
        2.    Ground two – regarding joint representation at trial – should be denied
            after AEDPA review because the decision of the Ohio court is not
            contrary to clearly established federal law. . . . . . . . . . . . . . . . -18-
            a.    Joint representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
            b.    Choice of counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

3.      Ground one – challenging the voluntary and knowing nature of the guilty plea – should be denied because the decision of the Ohio court in denying this claim was not an unreasonable application of clearly established federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -28-

4.      Ground three – alleging ineffective assistance of counsel – should be denied because the decision of the Ohio court in this regard was not an unreasonable application of clearly established federal law. . . .  -33-

5.      Request in the traverse for an evidentiary hearing should be denied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -35-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -36-

# Introduction

Before me by referral[1] is the *pro se* petition of Marlon Hudson for a writ of habeas corpus under 28 U.S.C. § 2254.[2] In a consolidated case involving three separate incidents, Hudson in 2010 pled guilty in the Cuyahoga County Court of Common Pleas to multiple counts of aggravated robbery with a firearm specification, as well as to two counts of aggravated burglary with a firearm specification.[3] Upon conviction, he was sentenced to an aggregated term of 31 years in prison.[4] He is currently serving that sentence in the Mansfield Correctional Institution in Mansfield, Ohio.[5]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Jack Zouhary in a non-document entry dated May 22, 2013.

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.*

[5] *See*, ECF # 11; *see also*, http://www.drc.ohio.gov/OffenderSearch.

In his petition, Hudson raises four grounds for relief.[6] The State, in its return of the writ, argues initially that the first ground for relief (alleging that the plea was not knowing and voluntary) and ground three (a claim of ineffective assistance of counsel) should both be dismissed on the merits because the state court decision on those issues was not an unreasonable application of clearly established federal law.[7] Moreover, the State maintains that ground two (alleging denial of due process) should be dismissed as procedurally defaulted and that ground four (challenging the sentence as being disproportionate to that received by a co-defendant) should be dismissed as non-cognizable.[8] Hudson has filed a traverse wherein he requests an evidentiary hearing.[9]

For the reasons that follow, I will recommend that the petition be dismissed in part and denied in part.

---

[6] ECF # 1 at 5, 7, 8, 10.

[7] ECF # 7 at 21-36.

[8] *Id.*, at 9-21.

[9] ECF # 10.

# Facts

**A.**     **Background facts, plea, conviction, and sentence**

The underlying facts were determined by the Ohio appeals court on its review of the record:[10]

> {¶ 2} Demario and his brother, Marlon Hudson, were jointly indicted in three separate cases, which were consolidated at the trial court level.[FN1] The charges resulted from three incidents that occurred in January 2010, where the defendants broke into houses.
>
> [FN1]. A third defendant, Montana Hudson, was also indicted.
>
> {¶ 3} In the first incident, a 26-year-old single mother was present. Montana "guarded" the door, while Demario and Marlon rummaged through her house. Marlon had a sawed-off shotgun and Demario had a revolver. At some point during the crime, the victim's three-year-old daughter woke up and started crying when she saw the defendants. The defendants told the mother to get her under control. The defendants stole a number of the woman's personal effects.
>
> {¶ 4} The second incident occurred the following day. The victim, a college student home for winter break, was getting out of her car at her home when Marlon approached her with a sawed-off shotgun; Demario approached with a pistol. The defendants entered her home. The victim's father was present and the defendants forced him onto the ground. The victim's 17-year-old sister was also present; she remained hiding in a bedroom.
>
> {¶ 5} Marlon forced the victim into another bedroom and demanded money. When the victim responded that she did not have any, Marlon said he did not believe her and made her disrobe. The defendants stole numerous personal effects from the home.

---

[10] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). The appellate case here is the companion appeal by petitioner's co-defendant in the state court proceeding, his brother Demario Hudson. As noted, the operative underlying facts arise from the same incidents that are at issue here.

{¶ 6} The third incident occurred approximately one week later. Two females and one male were together in a car. One of the females was being dropped off. As the car was stopped so that the one passenger could get out, Demario, Marlon, and Montana ran up to the car and tried to force the male out. The defendants had weapons. The man ran away and the two women ran into their house. The defendants caught up with the man and forced him to the ground. The victim had a "doo-rag" on his head, which the defendants pulled down over his face. They then stripped him down to his underwear and socks. The defendants forced the victim into their vehicle, drove him to another location, and dropped him off in his underwear and socks.

{¶ 7} One person involved in each of the incidents was able to see that the defendants were in a dark-colored Plymouth Breeze. Demario and Marlon are brothers and their mother was the owner of a black Plymouth Breeze. Some of the victims also saw that the defendants were wearing rubber gloves.

{¶ 8} After the defendants were apprehended, several of the items the victims reported missing were found inside the Plymouth Breeze along with the same kind of rubber gloves the defendants used during the commission of the crimes. Other items reported missing by the victims were recovered during the execution of search warrants at the defendants' homes. More rubber gloves like the ones used during the commission of the crimes were found in Marlon's living quarters.

{¶ 9} Marlon and Demario pleaded guilty to eight first-degree felonies and three three-year firearm specifications. They were each sentenced to a 31-year prison term.[11]

## B.    Direct appeal

### 1.    *Ohio court of appeals*

Exactly 30 days after his conviction was entered, Hudson, now with new counsel, timely appealed his conviction and sentence to the Ohio court of appeals.[12] After successfully

---

[11] ECF # 7, Attachment (state court record) at 1-2.

[12] *Id.*, at 35.

moving to incorporate all three cases consolidated at trial into a single appeal,[13] and then obtaining permission to file a delayed appeal as a companion appeal with that of Hudson's brother and co-defendant,[14] a new notice of appeal was filed.[15] In the supporting brief, Hudson advanced the following five assignments of error:

    I.    THE TRIAL COURT DID NOT COMPLY WITH CRIM.R. 11 AND DEFENDANT'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE.

    II.    THE TRIAL COURT ERRED IN NOT PERMITTING THE APPELLANT TO OBTAIN COUNSEL OF HIS CHOICE OR THE RAMIFICATIONS OF JOINT REPRESENTATION.

    III.    DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

    IV.    IF DEFENSE COUNSEL REQUESTED A PSYCHOLOGICAL EXAMINATION, THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DENIAL AND/OR IN FAILURE TO HOLD A HEARING ON THE ISSUE.

    V.    THE TRIAL COURT ERRED IN IMPOSING A TERM OF INCARCERATION THAT IS NOT PROPORTIONATE TO SIMILARLY SITUATED OFFENDERS.[16]

---

[13] *Id.*, at 55-58

[14] *Id.*, at 58-59, 85.

[15] *Id.*, at 60-61.

[16] *Id.*, at 87.

The State filed a brief in response.[17] On December 8, 2011, the Ohio appeals court overruled all the assignments of error and affirmed the conviction and sentence.[18]

## 2.       *Supreme Court of Ohio*

On January 23, 2012, Hudson, acting through the same attorney as had represented him before the appeals court, filed a timely[19] notice of appeal with the Supreme Court of Ohio.[20] In his memorandum in support of jurisdiction Hudson raised the following five propositions of law:

> Proposition of Law No. I: When a defense attorney questions his client's competency and informs the Court the defendant cannot assist in his defense, a trial court must either conduct a hearing on said competency or refer the Defendant for a psychological examination.
>
> Proposition of Law No. II: After having an attorney leave the courtroom, a trial court must conduct a substantive discussion with the Defendant concerning one's right to be represented by counsel and the choice and ramifications of dual representation with co-Defendant's counsel.
>
> Proposition of Law No. III: When a defendant informs the Court he was promised by his counsel a certain sentence which induced him to plea and then, after explanation by the trial court, enters a plea of not guilty, the trial court must conduct a thorough discussion with Defendant to ensure his/her subsequent plea is intelligent, knowingly and voluntarily made.

---

[17] *Id.*, at 109-132.

[18] *Id.*, at 133-148.

[19] To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a), a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought. *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010).

[20] ECF # 7, Attachment at 149-51.

Proposition of Law No. IV: Failure to talk to one's client, to lead him to believe there was an agreed upon sentence when there was not, and to fail to adequately prepare him/her for the court proceedings constitutes ineffective assistance fo counsel.

Proposition of Law No. V: An appellate court is not relieved of conducting a disproportionate review analysis simply due to the fact that the co-defendant's sentence of four years occurred after the other co-defendant was sentenced to thirty one years incarceration.[21]

The State did not file a responsive brief, and on April 18, 2012, the Supreme Court of Ohio denied leave to appeal, dismissing Hudson's appeal as not involving any substantial constitutional question.[22]

**3.    Post-conviction motions**

*a.    Motions regarding payment of fines from inmate account*

Beginning with the filing of objections to paying his court-ordered fines with money from his inmate account,[23] Hudson moved to establish a payment plan.[24] The motion was denied.[25] Hudson has since filed additional motions to establish a payment plan.[26]

---

[21] *Id.*, at 169.

[22] *Id.*, at 204.

[23] *Id.*, at 205, 209.

[24] *Id.*, at 211-13.

[25] *Id.*, at 217.

[26] *Id.*, at 218-21. Beyond these filings, a review of the trial court docket shows additional motions to establish a payment plan have been filed through December, 2013.

*b.*     *Motion for relief from judgment*

On October 22, 2012, Hudson, *pro se*, moved for relief from judgment.[27] The State opposed the motion, arguing that it was untimely filed and that its grounds were barred by *res judicata*.[28] The trial court denied the motion,[29] and Hudson did not appeal this denial.

*c.*     *Motion to void judgment*

Hudson, *pro se*, then moved to void the judgment against him, citing ineffective assistance of counsel.[30] The record supplied by the State – and a current review of the on-line docket of the trial court[31] – discloses that no response to this motion was filed by the State, and no ruling by the court has been entered.

**4.     *Federal habeas petition***

On March 15, 2013, Hudson timely filed the present petition for federal habeas relief.[32] In the petition, Hudson raises the following four grounds for relief:

> **GROUND ONE:** The trial court did not comply with Crim.R. 11 and petitioner's plea was not knowingly, intelligently, and voluntarily made.

---

[27] *Id.* at 224-227.

[28] *Id.* at 228-232.

[29] *Id.* at 233-235. The three separate entries apply the denial to the three cases which involve Hudson and which were consolidated for trial.

[30] *Id.* at 236-240.

[31] *See*, http://cpdocket.cp.cuyahogacounty.us/CR_CaseInformation_Docket.

[32] ECF # 1. The petition was placed into the prison mail system on March 15, 2013. This date is less than a year after the Ohio Supreme Court denied Hudson leave to appeal in his direct appeal on April 18, 2012, thus making this petition timely.

**Supporting Facts:** Failure to talk to one's client, to lead him to believe there was an agreed upon sentence when there was not, and to fail to adequately prepare him/her for the court proceedings constitutes ineffective assistance of counsel. When a defendant informs the Court he was promised by his counsel certain sentence which induced him to plea and then, after explanation by the trial court, enters a plea of not guilty, the trial court must conduct a thorough discussion with Defendant to ensure his/her subsequent plea is intelligent, knowingly and voluntarily made. The Defendants were led to believe that their sentence would be a maximum of 12 years.

**GROUND TWO:** The trial court violated the petitioner's right to due process in not permitting the petitioner to obtain counsel of his choice or the ramifications of joint representation.

**Supporting Facts:** After having an attorney leave the courtroom, a trial court must conduct a substantive discussion with the Defendant concerning one's right to be represented by counsel and the choice and ramifications of dual representation with co-Defendant's counsel.

**GROUND THREE:** Petitioner was denied the effective assistance of counsel.

**Supporting Facts:** It is clear that defense counsel, who represented both Defendants who are brothers, did not adequately represent either of the Defendants. The discussion between defense counsel and the Court regarding which lawyer represented which client was disturbing. These Defendants were going to trial for what could result in sentences equal to the remainder of their lives and neither attorney had any meaningful discussions with one of their clients. At one point, the trial court asked why they didn't return the Defendant's money and opined on the record that Defendants should obtain other counsel. The Attorneys quickly talked the Defendants out of this and coerced them to plead guilty.

**GROUND FOUR:** The Petitioner received a disproportionate sentence than his Co-Defendant.

**Supporting Facts:** An appellate court is not relieved of conducting a disproportionate review analysis simply due to the fact that the co-defendant's sentence of four years occurred after the other co-defendants were sentenced to thirty four years' incarceration.[33]

---

[33] ECF # 1.

As noted above, the State argues that ground two should be dismissed as procedurally defaulted and ground four dismissed as non-cognizable or procedurally defaulted, while grounds one and three should be denied as without merit.[34] As also noted, Hudson has filed a traverse wherein, *inter alia*, he requests an evidentiary hearing.[35]

## Analysis

**A.      Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that Hudson is currently in state custody as a result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, Hudson meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[36]

2.      There is also no dispute, as detailed earlier, that the petition here was timely filed under the applicable statute.[37]

3.      In addition, Hudson states,[38] and my own review of the docket in this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[39]

---

[34] ECF # 7.

[35] ECF # 10.

[36] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[37] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[38] ECF # 1 at 12.

[39] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

4.    Moreover, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[40]

5.    Finally, Hudson is not represented by counsel.[41] Hudson in his traverse requested an evidentiary hearing to develop the factual bases of his claims.[42]

## B.    Standards of review

### 1.    *Procedural default*

Under the doctrine of procedural default, the federal habeas court may not review a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or because of some other violation of a state procedural rule.[43]

When the State asserts a violation of a state procedural rule as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)    Does a state procedural rule exist that applies to the petitioner's claim?

(2)    Did the petitioner fail to comply with that rule?

(3)    Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

---

[40] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[41] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[42] ECF # 10 at 17; 28 U.S.C. § 2254(e)(2).

[43] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[44]

In addition to establishing these elements, the state procedural rule must be (a) firmly established, and (b) regularly followed before the federal habeas court will decline review of an allegedly procedurally defaulted claim.[45]

If the State establishes a procedural default, the petitioner may overcome the default if he can show (1) cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claims merits will result in a fundamental miscarriage of justice.[46] In addition, a showing of actual innocence may also excuse a procedural default.[47]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, prevented him from complying with the state procedural rule.[48] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire

---

[44] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[45] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[46] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[47] *Id.*

[48] *Id.* at 753.

-13-

proceeding with error of a constitutional dimension.[49] If the petitioner cannot show a reasonable probability of a different outcome at trial, prejudice does not exist.[50]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[51] In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[52]

## 2.    *AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute provides that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[53]

---

[49] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[50] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[51] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[52] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[53] 28 U.S.C. § 2254(d).

In applying that statute, the well-known teachings of *Williams v. Taylor* guide the federal habeas court.[54] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[55] *Williams* further holds that a state court decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[56]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[57] Rather, the federal habeas court may disturb the state court holding only upon showing that it was "objectively unreasonable."[58]

---

[54] *Williams v. Taylor*, 529 U.S. 362 (2000).

[55] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[56] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[57] *Williams*, 529 U.S. at 411.

[58] *Id.* at 409.

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult to meet,"[59] and "highly deferential" to the decision of the state court.[60] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[61] Or, stated differently, a writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[62]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[63]

As the Supreme Court observed in *Harrington v. Richter*, a state court need not state its reasons or explain its conclusion when it adjudicates a federal claim on the merits.[64] When a criminal defendant presents a federal claim to the state court, which then denies it without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-

---

[59] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[60] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[61] *Richter*, 131 S. Ct. at 786.

[62] *Id.* at 786-87.

[63] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[64] *Richter*, 131 S. Ct. at 784-85.

-16-

law procedural principles to the contrary."[65] In such circumstances, the federal habeas court must give deference to the decision of the state court.[66]

## C.  Application of standards

### 1.  *Ground four – disproportionate sentence – should be dismissed as non-cognizable.*

Hudson misapprehends the law concerning disproportionate sentencing. Unlike Hudson's assertion in the traverse, which purportedly locates any such violation in the Due Process Clause of the Fourteenth Amendment, the Supreme Court has long-held that it is the Eighth Amendment's final clause prohibiting cruel and unusual punishments, including "sentences that are disproportionate to the crime committed,"[67] that provides the source for the clearly established federal law applicable here. But, the Supreme Court has also consistently held that this prohibition of disproportionate sentencing is applicable only to instances dealing with "the appropriateness of a sentence for a particular crime."[68] In other words, the Constitution only deals with "the inappropriateness of the sentence in relation to the particular characteristics of the crime and the criminal at issue."[69]

By contrast, Hudson argues that his sentence is constitutionally defective as disproportionate to the sentence received by a co-defendant. In fact, the Supreme Court has

---

[65] *Id.*; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[66] *Brown*, 656 F.3d at 329.

[67] *Solem v. Helm*, 463 U.S. 277, 284 (1983).

[68] *Pulley v. Harris*, 465 U.S. 37, 42-43 (1984).

[69] *Getsy v. Mitchell*, 495 F.3d 295, 304 (6th Cir. 2007).

-17-

expressly rejected this precise argument more than 25 years ago in *McClesky v. Kemp*.[70] In that case, the Supreme Court applied its prior holding in *Pulley v. Harris* to conclude that a criminal defendant does not "prove a constitutional violation by demonstrating that other defendants who may be similarly situated did not receive [the same sentence]."[71]

Thus, any claim for relief that Hudson may assert as arising from the differences between the sentence imposed on him and that imposed on a co-defendant would not be a constitutional claim cognizable in federal habeas court. Instead, as is shown by the consistent framing of his argument in this regard during direct appeal, any claim here is a state law claim arising out of the operation of Ohio's statute on sentencing guidelines.[72] In that sense, as pointed out by the State, it is purely a state law claim that is non-cognizable in a federal habeas proceeding.[73]

Accordingly, ground four should be dismissed as non-cognizable.

2.  **Ground two – regarding joint representation at trial – should be denied after AEDPA review because the decision of the Ohio court is not contrary to clearly established federal law.**

In his second ground for relief, Hudson argues that the trial court erred by not permitting him to choose his own counsel and because it did not inform him of the ramifications of joint representation. The State argues that because Hudson in his habeas

---

[70] *McCleskey v. Kemp*, 481 U.S. 279 (1987).

[71] *Id.* at 306-07.

[72] *See*, Ohio Rev. Code § 2929.11.

[73] *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

-18-

petition characterized this alleged violation as a denial of due process[74] – an assertion that was not made to the Ohio courts – Hudson has procedurally defaulted this claim because he has not presented the same claim on the same theory to the federal court as to the state courts. It further contends that the claim that was presented to the Ohio court was "properly rejected," although the State cites to no constitutional principle relied upon by the Ohio court for such rejection.[75]

Initially, the State is correct to note that Hudson, inexplicably, chose to add the term "due process" to a claim he made in great detail throughout the direct appeal process but without characterizing it as a due process violation. While much of Hudson's petition and brief bear the marks of having been drafted by a "jailhouse lawyer" with some experience in preparing legal arguments, this is an example of where Hudson and/or his draftsman either misunderstood or ignored the careful constitutional formulation of this claim in the direct appeal process in favor of gratuitously adding a single phrase that both changed the constitutional ground for the entire claim while adding nothing of significance to the argument, all while subjecting the entire claim to dismissal as procedurally defaulted.

Such a truly risky or foolish act done with no possible advantage can only be the result of the inexperience of a *pro se* litigant and/or his similarly inexperienced "jailhouse lawyer." While the federal habeas court need not be the reviewing attorney for a *pro se* litigant, editing his brief to remove even fatal mistakes in his formulation of his claims, the better

---

[74] ECF # 7 at 14-17.

[75] *Id.*

-19-

course, when possible, is to excuse errors in drafting so as to reach the merits of the underlying claim. Thus, here I recommend either excusing the addition of the phrase "due process" from this claim as a *pro se* drafting error that did not accurately track the precise formulation of this claim throughout the state courts or, if it is to be seen as a procedural default, overlooking the default because the claim itself is without merit.

As the State acknowledges, this claim in its original form was presented to the Ohio courts as a Sixth Amendment claim, and never as a due process claim. In his appellate brief, Hudson asserted that he was denied the right to choose his own counsel, and that the trial court should have alerted him to the dangers of joint representation.[76]Hudson alleged that the actions of the trial court violated the Sixth Amendment's guarantee of the right to counsel, which provision, he maintained, was implicated when a defendant informs the court of any dissatisfaction with his current representation.[77]

The Ohio appeals court, in a brief section of its opinion, concluded that unless the trial court actually knows of any problems with joint representation, it not required to initiate an inquiry into the propriety of such a situation but rather may assume that either no conflict exists as a result of joint representation or that the client has knowingly accepted any risk as may exist.[78] Accordingly, it found that because Hudson made no objections to the representation of his attorney when asked about it by the court, and actually stated that he

---

[76] ECF # 7, Attachment at 97-99.

[77] *Id.*

[78] *Id.*, at 141-42 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)).

desired to have his present counsel continue with his representation, the trial court was not aware of any actual problem with the dual representation and was not required to inquire further.[79]

As noted, the Ohio appeals court addressed the issue of joint representation but did not squarely address the related issue of choice of counsel. Those two issues will be considered below.

a.    *Joint representation*

The Supreme Court teaches that while there is an inherent possibility of a conflict of interest when one lawyer represents multiple defendants, such joint representation is not *per se* violative of the Constitution.[80] Rather, prejudice will be found only when the defendant "demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"[81] Moreover, the Supreme Court observed that courts generally presume that counsel is conscious of his duty of complete loyalty to his client and so necessarily rely on the "good faith and good judgment of defense counsel" to avoid conflicts of interest.[82]

---

[79] *Id.*

[80] *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978).

[81] *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).

[82] *Burger*, 483 U.S. at 783 (quoting *Sullivan*, 446 U.S. at 347)).

In that regard, the rule is that a trial court may not require joint representation if counsel or the defendant objects to that representation in open court.[83] But, in *Sullivan*, the Court declined to require any action by the trial court where no objection by counsel or the defendant was made at trial. Rather, in such a situation, *Sullivan* found that "[i]n order to establish a violation of the Sixth Amendment [by reason of prejudice from joint representation], a defendant who made no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."[84] In addition, the Court found that "nothing in [its] precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representations in every case."[85]

In sum, as the Sixth Circuit stated in *Smith v. Hofbauer*,[86] where counsel engages in joint representation, makes no objection to that fact, and nothing reasonably indicates to the trial court that a conflict of interest exists, a defendant claiming a Sixth Amendment violation must show that an actual conflict of interest existed and that this conflict adversely affected his counsel's performance.[87] Further, even if it could be shown that the existence of a conflict should have been known to the trial court, or should have been discovered by it as a consequence of it making inquiries following reasonable indications of the existence of a

---

[83] *Holloway*, 435 U.S. at 488.

[84] *Sullivan*, 466 U.S. at 348.

[85] *Id.* at 346.

[86] *Smith v. Hofbauer*, 312 F.3d 809 (6th Cir. 2002).

[87] *Id.* at 815 (citing *Sullivan*, 466 U.S. at 348).

conflict, the Supreme Court has held that a defendant seeking to prove a Sixth Amendment violation is still required to show that the supposed conflict adversely affected his counsel's performance.[88]

Here, even if Hudson could plausibly argue that both his comments at trial and that of his counsel were reasonable indications of some conflict of interest that should have required a greater inquiry from the trial court into the nature of any such conflict, and even if a conflict is presumed to have existed, there is nothing in the record, nor in the appellate brief, to show that Hudson has attempted to meet his burden of showing that the joint representation here adversely affected his attorney's performance. The allegation that his counsel was somehow not diligent or zealous in his actions, which Hudson makes in the context of another claim for relief involving ineffective assistance, or that counsel had difficulty in communication, does not meet the standard of showing, from "specific instances in the record,"[89] where counsel made a specific choice, adverse to Hudson, "*caused by the conflict of interest.*"[90]

Accordingly, given that the Ohio court denied the claim with some citation to relevant federal law, and that the decision, which remains entitled to deference, is not contrary to the more complete standard reviewed here above, the joint representation portion of this claim should be denied for the reasons stated.

---

[88] *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

[89] *See*, *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir.1987).

[90] *See*, *McFarland v. Yukins*, 356 F.3d 688, 706 (6th Cir. 2004) (emphasis added).

-23-

b.    *Choice of counsel*

The Supreme Court teaches that the Sixth Amendment "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.[91] A defendant is deprived of this right when he is "erroneously denied counsel of his choice; he need not show prejudice or demonstrate that the counsel he received was ineffective."[92]

This right, however, is not universal to all defendants. As the Sixth Circuit explains, the right to counsel of one's choice has no applicability to defendants who require the appointment of counsel.[93] Moreover, while courts must recognize a presumption in favor of the right to counsel of one's choice, that presumption may be overcome by a showing of actual conflict of interest on the part of the chosen counsel, as well as by demonstrating a serious potential for such conflict.[94]

In that regard, the Supreme Court has stated that while a trial court alerted to the possibility of a conflict of interest arising in the case of joint representation must "take adequate steps to ascertain whether the conflicts warrant separate counsel,"[95] reviewing courts must be aware that "trial courts confronted with multiple representations face the

---

[91] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).

[92] *Abby v. Howe*, 742 F.3d 221, 226-27 (6th Cir. 2014) (citing *Gonzalez-Lopez,* 548 U.S. at 147).

[93] *Daniels v. Lafler*, 501 F.3d 735, 739 (6th Cir. 2007) (citing *Gonzalez-Lopez*, 548 U.S. at 144; *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)).

[94] *Wheat v. United States*, 486 U.S. 153, 160 (1988).

[95] *Id.* (citing *Holloway*, 435 U.S. at 489-90).

prospect of being 'whip-sawed' [on appeal] no matter which way they rule."[96] The Court here noted that if the trial court in a joint representation situation discerns a conflict but permits multiple representation to continue, the conflict may later be claimed to have impaired the effectiveness of counsel.[97] Further, if the trial court determines that a conflict prohibits multiple representation, a defendant may later claim he was denied representation by a counsel of his choice when he is forced to obtain counsel other than the one whom he originally selected.[98]

In addition, not even a waiver of any conflict – either real or apparent – will necessarily solve the problem, since appeals courts indulge every presumption against the waiver of fundamental rights.[99] And, the Court noted, "[u]nfortunately for all concerned, a [trial] court must pass upon the issue of whether or not to allow a waiver of conflict of interest by a criminal defendant not with the wisdom of hindsight after a trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly."[100] Accordingly, a trial court "must be allowed substantial latitude" in addressing this situation.[101]

---

[96] *Id.* at 161.

[97] *Id.*

[98] *Id.* at 161-62.

[99] *Id.* at 162 (citation omitted).

[100] *Id.*

[101] *Id.* at 163.

This present matter arises in the situation where Hudson's counsel was retained for him by his mother.[102] In that regard, Hudson certainly did not need the trial court's permission to fire his counsel and obtain different counsel, nor did he require any hearing into the dual representation so that any facts could be found by the court on conflict of interest. Rather, Hudson could have instantly effected a change of counsel for the reasons he stated (or for no reason at all) by just directing his mother to take such action on his behalf. Put simply, Hudson was always actually represented by counsel of his choice in this case. Thus, he cannot now claim a deprivation of that right by attempting to make the court responsible for his own actions or failure to act when he had the authority to act.

Moreover, Hudson never raised a claim of conflict of interest from the dual representation – a subject, in fact, that never arose during the lengthy colloquy at the plea hearing. Instead, the issue raised at the plea hearing was whether counsel was adequately communicating with Hudson – an issue going to the effectiveness of the representation. The trial court addressed that issue by telling defense counsel that if they felt they could not communicate with their client, they had a duty to withdraw.[103] By implication, as noted above, the trial court's emphasis on the fact that counsel was retained served to inform Hudson that if felt he could not communicate with his own retained counsel, he had the power simply to remove them.

---

[102] ECF # 7, Attachment 4 at 14.

[103] *Id.*, at 9-12.

Moreover, Hudson did express full satisfaction with the representation of his attorneys at multiple times during the plea hearing,[104] while his attorneys, for their part, fully assured the court on multiple occasions in the same hearing that they were capable of representing both defendants without ethical difficulties.[105] Even while understanding that this exchange goes primarily to the issue of the efficacy of Hudson's representation [which is the subject of a separate ground for relief here] and not choice of counsel, and while further not presuming this colloquy to be a waiver in any formal sense of any (unstated) conflict of interest claim, Hudson's repeated statements that he is satisfied with his counsel's representation, and that he desired such representation to continue, does provide further evidence that the trial judge responded quickly and thoroughly to address any indication that there were problems with the attorney-client relationship in this matter.

In addition, this on-the-record discussion perfectly illustrates how Hudson is here attempting to do what *Wheat v. United States* warned against: that is, to "whip-saw" the trial judge after the fact for somehow failing to discern a conflict of interest where none was suggested, and for then failing to alert him to the dangers of dual representation by an attorney he chose himself and whose representation he repeatedly endorsed. As *Wheat* noted, had the judge here acted to suggest or require the removal of retained counsel on the basis of mere hypothetical possibilities of conflict, Hudson would now have far firmer grounds

---

[104] *Id.*, at 8-14.

[105] *Id.*

-27-

than he has for asserting that his right to choose his own counsel had been interfered with by the court without sufficient cause.

For this reason, the federal habeas court needs to be mindful of the Supreme Court's clear admonition in *Wheat* that a trial judge must be afforded "substantial latitude" in handling such inherently murky dual representation situations.

Accordingly, the decision of the state appeals court in rejecting this claim should be found to be not contrary to clearly established federal law. Although the Ohio court did not directly address the choice of counsel element, its denial of that claim in the context of the entire joint representation claim is nonetheless entitled to deference from the federal habeas court, and a review of the applicable clearly established federal law on that issue shows that the decision of the Ohio court was fully consonant with that law and in no way contrary to it.

Thus, this claim should be denied.

**3.      *Ground one – challenging the voluntary and knowing nature of the guilty plea – should be denied because the decision of the Ohio court in denying this claim was not an unreasonable application of clearly established federal law.***

Hudson's claim here, as it was in Ohio court, was that the trial court did not comply with Ohio Criminal Rule 11 in taking his guilty plea and so the plea was "not knowingly, intelligently and voluntarily made."[106]

The state court reviewed the claim with the focus on whether the trial court strictly complied with the requirements of Ohio Criminal Rule 11 and concluded as follows:

---

[106] ECF # 1 at 5.

Criminal Rule 11(C) states in pertinent part:

"(2)    In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

"(a)    Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

"(b)    Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

"(c)    Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

Hudson initially entered a plea of not guilty, but decided to change his plea to guilty prior to trial. Attorney Valentine Schurowliew, co-counsel for Hudson, revealed to the court that he had experienced problems communicating with his client and that this communication problem had impeded his efforts to properly represent Hudson. The trial court inquired further and determined that attorney Stanley Josselson was retained counsel for both Hudson and his brother, co-defendant Demario Hudson. Schurowliew was employed by Josselson and was present to assist. Josselson clarified to the court that he had engaged both defendants in "quite a bit of discussion" concerning their cases. He then told the court that Hudson was prepared to enter his plea.

The state provided the court with the terms of the amended indictments contained in the plea agreement. The trial court then engaged both defendants in a plea colloquy. Hudson stated that it was his desire that Josselson continue to represent him and that it was his wish to take the plea agreement. The court asked Hudson if he understood that he would be pleading guilty to eight felonies of the first degree, and that each was "possibly punishable by [sic] from 3 to 10 years in yearly increments," and he responded "yes." The court

-29-

explained to Hudson that he would have "an underlying basic sentence of 9 years" due to firearm specifications, and that "the 9 year sentence would be placed before any sentence on the felonies of the first degree." Hudson stated that he understood.

The court inquired of Hudson if there were any promises or threats made to induce him to change his plea, and he responded that "[t]hey said that it would be 12 years." The court stated at length that it did not discuss sentencing with either side and does not do so as a matter of policy. The court questioned both the prosecutor and defense counsel with regard to discussions on length of sentence. Both confirmed that no conversations were held with the court concerning sentencing. Josselson added, however, that the prosecutor had agreed not to argue against a minimum 12 year sentence.

The court asked Hudson how he wished to plead, and he stated "not guilty." With this, the court stated its intention to proceed immediately to trial. Hudson thereafter changed his plea to guilty. When the court asked him if he was "in fact, guilty," Hudson replied "yes."

\* \* \* \* \*

Viewing the totality of the circumstances in the case at bar, it is clear that Hudson knowingly, intelligently, and voluntarily entered his plea of guilt. The colloquy reveals that a meaningful dialogue took place between Hudson and the trial court. The court determined that Josselson was the attorney representing Hudson and had held lengthy discussions with him about his case. The court addressed Hudson and informed him of the rights that he would be waiving. Charges and potential penalties were discussed. The court explained the collateral consequences of the plea, including financial sanctions and postrelease control. The court explicitly clarified to Hudson that no promises concerning sentencing would be enforced. Hudson then made a complete admission of guilt on the record.[107]

The clearly established federal law on the requirements for a valid guilty plea are well-established. A guilty plea is more than a confession admitting that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine

_____

[107] ECF # 7, Attachment at 136-40.

punishment.[108] As such, a plea waives the right to trial before a judge or jury and, therefore, must be made voluntarily and intelligently,[109] as determined under the totality of the circumstances.[110] The Constitution requires that the totality of the circumstances reflect that the defendant is informed of the direct consequences of the plea.[111] Moreover, a valid plea must be a voluntary and intelligent choice among the alternative courses of action open to the defendant.[112]

In a habeas proceeding, the State bears the burden of showing the petitioner's plea was valid and usually does so by producing a transcript of the plea hearing.[113] Although no exact recital of waived rights is required, the record should reflect a full understanding of the direct consequences of the plea, so that it is clear that the plea represents a voluntary and intelligent choice among the alternatives.[114] The court will not presume a valid waiver from a silent record.[115]

---

[108] *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[109] *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

[110] *Brady v. United States*, 397 U.S. 742, 749 (1970).

[111] *Id.* at 755.

[112] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

[113] *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

[114] *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

[115] *Boykin*, 395 U.S. at 243.

Because a valid plea is a solemn declaration of guilt by the defendant, it carries a presumption of truthfulness.[116] In addition, having entered a valid plea, the defendant may not then challenge antecedent non-jurisdictional defects in the proceedings.[117] As the Supreme Court teaches, this is because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."[118] Thus, as the Sixth Circuit has recently reaffirmed, "after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself."[119]

Here, although the trial court reviewed this claim under state law according to the form in which it was submitted,[120] the decision of the court denying this claim is not contrary to the clearly established federal law regarding valid guilty pleas. As the Ohio appellate opinion carefully noted, the trial court here engaged in a substantial plea colloquy with Hudson so as to clearly set forth, despite the confusion manifest early in the discussion, that Hudson: (1) understood the nature of charges against him; (2) had discussed the matter with his attorneys and was satisfied with that discussion; (3) had an understanding of the constitutional rights he was waiving by entering a plea; and (4) had a clear understanding of

---

[116] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[117] *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).

[118] *Id.* at 267.

[119] *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012).

[120] The State makes no procedural default argument here that the federal habeas claim is not the same claim on the same theory that was presented to the Ohio court, although such an argument would appear to be warranted. In any event, even if this claim were argued to be procedurally defaulted, I would recommend overlooking any such default because the claim is without merit.

the potential penalties involved and that there had been no promises made by the court regarding any sentence. Only after these items were reviewed on the record and Hudson expressed his understanding and consent was the plea then accepted.

Hudson here again seeks to make an issue of his purported confusion about whether counsel actually represented him. In fact, as discussed above, a substantial portion of the plea colloquy was devoted to clarifying that counsel was Hudson's retained counsel; that counsel and Hudson were both satisfied with that representation; and that Hudson was pleading guilty because he was actually guilty.[121]

Accordingly, based on the clearly established federal law cited above, ground one should be denied on the merits because the Ohio court decision denying this claim was not contrary to clearly established federal law.

**4.** ***Ground three – alleging ineffective assistance of counsel – should be denied because the decision of the Ohio court in this regard was not an unreasonable application of clearly established federal law.***

Hudson claims here that his counsel was ineffective because (1) "neither attorney had any meaningful discussions with [Hudson]," and (2) the attorneys "talked [Hudson] out of [the idea of obtaining other counsel] and coerced [him] into pleading guilty."[122]

The state court, after recognizing that claims of ineffective assistance of counsel are adjudicated under the clearly established federal law of *Strickland v. Washington*,[123] noted

---

[121] ECF # 7, Attachment 4, at 1-30.

[122] ECF # 1 at 8.

[123] *Strickland*, 466 U.S. 668.

-33-

first that any claims of ineffective assistance are waived by a valid guilty plea.[124] In that regard, the court noted that in order to proceed with an ineffective assistance claim after such a plea, a defendant must demonstrate that there is a reasonable probability that, but for the ineffective assistance, he would not have pled guilty and would have insisted on going to trial.[125]

In this case, the Ohio appeals court stated, Hudson does not argue that any alleged ineffectiveness by counsel caused him to plead guilty.[126] Moreover, it explicitly noted that when the trial court stated during the plea colloquy that it was "ready to proceed to trial and let the jury find you not guilty,"[127] Hudson quickly responded with his desire to plead guilty.[128] Thus, the court overruled the assignment of error claiming ineffective assistance.[129]

A review of the record and the applicable law shows that two aspects of the present claim of ineffective assistance – (1) no meaningful discussion with counsel, and (2) talking Hudson out of the idea of obtaining other counsel – were waived by the entry of the guilty plea. Further, any possible merit in the third element of the claim – that counsel "coerced" the guilty plea – was undercut when Hudson himself shut off any further discussion by the

---

[124] ECF # 7, Attachment at 143.

[125] *Id.* (citing *State v. Szakacs*, No. 92230, 2009 WL 3321389 (Ohio Ct. App. Oct. 15, 2009) (citing *Hill*, 474 U.S. at 58-59).

[126] *Id.*

[127] *Id.*, Attachment 4 at 29.

[128] *Id.*, Attachment at 143.

[129] *Id.*

court of proceeding to trial by announcing in open court and on the record that he desired to plead guilty and was, in fact, guilty.

Thus, ground three should be denied because the state court decision denying this claim was not an unreasonable application of clearly established federal law.

## 5.    Request in the traverse for an evidentiary hearing should be denied.

As noted above, Hudson makes a perfunctory request for an evidentiary hearing at the conclusion of his traverse.[130]

The federal habeas statute provides for evidentiary hearings as follows:

> Section 2254 precludes a court from allowing an evidentiary hearing unless the applicant shows that "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court ... [or] a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A). Further, the applicant must also demonstrate, by clear anc convincing evidence, that "the facts underlying the claim would be sufficient to establish that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).[131]

In that regard, the Sixth Circuit teaches that "federal courts are generally prohibited 'from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state court.'"[132] Further, in deciding whether or not to grant an evidentiary hearing, the federal habeas court must consider whether such a hearing would enable the

---

[130] ECF # 10 at 17.

[131] *Cannon v. Bunting*, No. 5:13 CV 981, 2014 WL 6687220 (N.D. Ohio Nov. 26, 2014).

[132] *Bailey v. Smith*, 492 F. App'x 619, 625 (6th Cir. 2012) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

petitioner to prove the factual allegations of the petition and so entitle the petition to habeas relief.[133] When addressing whether a hearing would enable a petitioner to obtain habeas relief, the federal district court must take into account that relief is only possible if the petitioner can overcome "the deferential standards" imposed by the federal habeas statute.[134]

Here, Hudson's request for an evidentiary hearing is a single, unsupported phrase in the conclusion of his traverse that makes no attempt at showing how Hudson may have tried but failed to develop the factual basis for any claim in the Ohio courts. Nor does this perfunctory request elucidate what new facts might lead to the granting of habeas relief, especially in light of the facts already in the record from proceedings such as the plea colloquy. In short, there is nothing in this request for a hearing to demonstrate that such a hearing is warranted based on Hudson's past diligence in developing the factual basis for any claim, nor to show how a hearing would result in habeas relief.

Thus, for the reasons stated, Hudson's request for an evidentiary hearing should be denied.

## Conclusion

For the reasons stated, the petition of Marlon Hudson for a writ of habeas corpus should be dismissed in part and denied in part as is more fully set forth above.

Dated: January 9, 2015                              s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[133] *Landrigan*, 550 U.S. at 474.

[134] *Id.*

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[135]

---

[135] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).