IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Marlon Hudson, | Case No. 1:13 CV 590 |
| Petitioner, | ORDER ADOPTING <u>REPORT & RECOMMENDATION</u> |
| -vs- | JUDGE JACK ZOUHARY |
| Christopher LaRose, | |
| Respondent. | |

## INTRODUCTION

Petitioner Marlon Hudson filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). This Court referred Hudson's case to Magistrate Judge Baughman, whose Report & Recommendation ("R&R") recommends denying in part and dismissing in part the Petition (Doc. 12 at 3). Hudson objects to the R&R (Doc. 15). Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court reviewed de novo the Magistrate Judge's findings. This Court adopts the R&R.

## BACKGROUND

The R&R accurately states the relevant factual and procedural background, and this Court adopts that recitation (Doc. 12 at 4–12). Hudson pled guilty to aggravated robbery and burglary with firearm specifications, arising out of three armed robberies in January 2010. His mother retained counsel to jointly represent Hudson and brother Demario Hudson, who were indicted along with cousin Montana Hudson. A state court sentenced each brother to 31 years of imprisonment.

#### DISCUSSION

Hudson raises four objections to the R&R. First, Hudson states his sentencing disparity claim is cognizable on federal habeas review (Doc. 15 at 2). Second, Hudson argues the trial court erred in two ways: it failed to adequately investigate and advise Hudson of the perils of joint representation, and it "coerced" Hudson into maintaining joint representation (*id.* at 3–6). Third, Hudson argues his plea was not knowing, voluntary, or intelligent (*id.* at 6–8). Fourth, Hudson argues he received ineffective assistance of trial counsel (*id.* at 8).

***Hudson's Sentencing Disparity Claim***. Though he pled to similar charges as the Hudson brothers, Montana Hudson received only a four-year term of imprisonment, in part because the trial court transferred his case to its mental-health docket. Hudson claims that disparity requires federal habeas relief. His sentencing disparity claim can be read one of two ways. Read either way, it fails.

First, Hudson claims "the state has misapplied its own sentencing laws to create disproportionate sentences for three codefendants" (Doc. 15 at 2). The Ohio court of appeals found no error as a matter of state law (Doc. 7-3 at 50–52). "[A] state court's interpretation of state law, including one announced on direct appeal of the [conviction being challenged in a federal habeas action], binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). Further, and even though this Court must accept a state court conclusion about state law as correct, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Hudson's state-law sentencing disparity claim fails.

Second, Hudson claims the fact that he received a lengthy sentence while his cousin did not is both an Eighth Amendment violation and "also a violation of his due process rights" (Doc. 15 at 2). But there are two fatal problems with Hudson's federal-law sentencing disparity argument. First,

2

he defaulted the claim because he never presented a federal-law sentencing disparity argument to a state court (Doc. 7-2 at 104–08) (brief in the court of appeals on direct review); (Doc. 7-3 at 34–36) (memorandum in support of jurisdiction filed in the Ohio Supreme Court). Second, Hudson cannot show an unreasonable application of clearly established federal law. The Supreme Court has never articulated the rule he invokes -- that a state court violates the federal Constitution when it hands out different sentences to different defendants charged in the same indictment. *See, e.g.*, *Getsy v. Mitchell*, 495 F.3d 295, 305 (6th Cir. 2007). His federal-law sentencing disparity claim fails.

***Hudson's Joint-Representation Arguments***. Hudson's second Objection ties into Ground Two of his Petition, which alleges the Ohio court of appeals unreasonably applied clearly established federal law in affirming the trial court's judgment, even though the trial court failed to warn him of the perils of joint representation or appoint separate counsel.

Midway through jury selection, the State told the trial court that Hudson and Demario would plead guilty to a subset of the charges alleged in the three indictments consolidated for trial. In exchange, the State would dismiss other charges and not oppose a twelve-year sentence, the statutory mandatory minimum sentence that both brothers faced. As it happened, the Hudson brothers received a substantially longer term of imprisonment because the state trial court handed down consecutive sentences for convictions to the three amended indictments.

Two defense counsel jointly represented the Hudson brothers -- Stanley Josselson and Valentine Schurowliew. After an outburst from Hudson, Schurowliew informed the trial court that he had difficulty communicating with Hudson and that he "always communicated with Demario" (Doc. 7-4 at 3–4). Schurowliew thought Hudson needed "treatment" because he was not a "rational

3

person" (*id*. at 4). Schurowliew "steered clear" of Hudson for that reason (*id*.). He did not think Hudson was able to assist in his own defense (*id*. at 6).

Piqued that Schurowliew had not earlier raised the issue, the trial court inquired further. Schurowliew assured the trial court that he knew the facts of the case he was set to defend and had experience defending against felony charges (*id*. at 3–8). Schurowliew also explained the nature of his employment. Hudson's mother retained Josselson who, in turn, retained Schurowliew to assist with the case (*id*. at 6). Josselson assured the trial court that Schurowliew "has communicated with Marlon and I have also" (*id*. at 10). Josselson also stated he was prepared to represent Hudson (*id*. at 12). Finally, the trial court spoke to Hudson, who agreed to move forward with plea proceedings with Josselson and Schurowliew as his lawyers (*id*. at 12–14).

"[W]hen a defendant or his counsel voices a timely objection to joint representation of clients with antagonistic interests and the trial court fails to investigate the conflict, a defendant is entitled to automatic reversal without demonstration of prejudice." *McFarland v. Yukins*, 356 F.3d 688, 700 (6th Cir. 2004). Here, the Ohio court of appeals did not unreasonably conclude neither Josselson nor Schurowliew, nor Hudson, objected to continued joint representation on the basis of a conflict of interest (Doc. 7-3 at 46). Rather, Schurowliew's comments during plea proceedings questioned Hudson's ability to aid in his own defense, a claim the trial court rejected, noting that based on its observations of Hudson there was no reason to doubt his capacity to assist in his defense (*see* Doc. 7-4 at 8–9). Further, all three men agreed to continue with Hudson's plea proceedings after inquiry from the trial court.

When "neither the defendant nor defense counsel makes a timely objection to joint representation, prejudice is presumed only if the defendant demonstrates on appeal that 'an actual

4

conflict of interest adversely affected his lawyer's performance.'" *Harris v. Carter*, 337 F.3d 758, 762 (6th Cir. 2003) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980)). "To find an actual conflict, we require petitioner to point to specific instances in the record to suggest an actual conflict or impairment of his interests and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *McElrath v. Simpson*, 595 F.3d 624, 631 (6th Cir. 2010) (internal quotation marks and brackets omitted).

Hudson has not even attempted to point to evidence of a conflict posed by the joint representation. He only asserts he was "prejudiced by sharing joint counsel with his brother" and "[a]ll decisions that were made were made with the interest of both defendants in mind instead of specifically for the Petitioner" (Doc. 15 at 4). There is no support for any of this. Both Hudson brothers received the same plea deal and the same sentence, even though the State identified Hudson, not Demario, as "the ring-leader" in each of the armed robberies (Doc. 7-4 at 36).

Hudson's counsel-of-choice argument rests on the premise that the state trial court should have severed the joint-representation arrangement and appointed separate counsel. Because the Ohio court of appeals reasonably decided otherwise, Hudson was not denied counsel of choice; in fact, Josselson and Schurowliew were retained counsel. "[A]n element of [the Sixth Amendment right to counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). The Ohio court of appeals could reasonably conclude that the state trial court honored that right. On federal habeas review, Hudson's claim that, in fact, he did not want to continue this attorney-client relationship cannot be squared with

5

his statements at the plea proceeding; he answered "yes" when the state trial court asked, "Is it your desire to continue [with retained counsel?]"(Doc. 7-4 at 14).

***Hudson's Plea Validity Arguments.*** After the state trial court responded to Schurowliew's concerns and obtained statements from both defense counsel and Hudson that they wished to continue with plea proceedings, the state trial court accepted Hudson and Demario's guilty pleas.

Hudson argues his plea was not knowing, voluntary, or intelligent. "At the plea hearing the Petitioner was thoroughly confused. He pled not guilty several times and then after the judge browbeat the Petitioner and his brother with unconscionable threats the Petitioner finally entered a plea of guilty" (Doc. 15 at 6). He claims "the state violated their verbal contract or the Petitioner's attorney lied to him" (*id*. at 8), because Hudson had been told "that he was pleading guilty to various crimes and the sentence would be 12 years" (*id*. at 6). Hudson states that all portions of the plea proceeding transcript cited in the R&R show a plea colloquy "that was devoted to coercing the Petitioner into admitting that he was satisfied with his representation" and guilty (*id*. at 8).

The Ohio court of appeals addressed this claim (Doc. 7-3 at 40–44), and so Hudson must show it unreasonably applied clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotation marks omitted).

For the reasons described in the R&R (Doc. 12 at 28–33), Hudson fails to carry his heavy burden under Section 2254(d)(1). The Ohio court of appeals could reasonably conclude that Hudson's

claims of coercion were not supported by the record; that the state trial court, defense counsel, and the prosecutor appropriately explained Hudson's potential sentence (that it would be *at least* twelve years of prison time); and that the state trial court's lengthy colloquy otherwise satisfied constitutional requirements, including that Hudson (a literate adult who at the time of his arrest planned on returning to school at a four-year university) understood the nature of the proceedings and of his plea (Doc. 17-4 at 19).

***Hudson's Effective Assistance of Counsel Claim.*** The Ohio court of appeals concluded Hudson had not shown a reasonable probability that, but for trial counsel's deficient performance, he would have proceeded to trial and not plead (Doc. 7-3 at 46–47). The R&R concludes that ruling was not an unreasonable application of clearly established federal law (Doc. 12 at 33–35).

This Court agrees. Hudson does not argue trial counsel's deficient performance affected the plea deal he received. Nor does Hudson argue that trial counsel failed to uncover important exculpatory evidence or assert a viable defense to the charges. Rather, he asserts that had he been correctly advised of his sentencing exposure prior the plea hearing, he would have proceeded to trial.

The Ohio court of appeals could find that Hudson failed to show a reasonable probability that he would have proceeded to trial absent counsel's allegedly deficient performance. Before Hudson entered his guilty plea, the state trial court corrected Hudson's mistaken belief about the plea agreement's sentencing terms (Doc. 7-4 at 25–30). Therefore, the Ohio court of appeals could reasonably conclude this was not a case in which Hudson entered a guilty plea on the basis of a flawed understanding of his sentencing exposure under the plea agreement.

Hudson faced trial on three consolidated indictments, containing (aside from the charges to which he pled) many more counts of aggravated burglary, kidnaping, arson, and gross sexual

7

imposition. All of these additional charges were dismissed under the plea deal (Doc. 7-2 at 6–12, 15–22). And while the State's recitation of the evidence against the Hudson brothers shows evidence of their guilt was not overwhelming, there was enough evidence for the Ohio court of appeals to reasonably conclude Hudson would not have proceeded to trial and exposed himself to a possibly lengthier sentence than he received under the plea deal.

Marlon, Demario, and Montana Hudson wore masks and purple rubber gloves during the crime spree. The Hudson brothers claimed at the plea proceeding that they were innocent, had no gun, and had never met the victims (Doc. 7-4 at 32–35). Trial counsel noted that a witness stated one of the perpetrators was a light-skinned African-American male, but neither Hudson brother fit that description. Trial counsel claimed the Hudson brothers purchased from Craigslist a portion of the stolen items found in the Hudson home (*id*. at 46–48). On the other hand, the State's evidence included testimony of multiple victims that Hudson's mother's car matched the make, model, and approximate color of the car used in the robberies; that purple rubber gloves of the type used in the robbery and some of the victims' stolen belongings were found in Hudson's mother's car hours after the third robbery; that one victim identified Marlon based on his distinctive "frog-like eyes" and the bridge of his nose, which were visible despite his mask; and that still more stolen items and purple gloves were found in Hudson's mother's basement, where Hudson lived (*id*. at 35–46).

"[I]in determining whether a defendant has shown prejudice, a court must predict whether correction of the deficient performance might have enabled the defendant to succeed at trial." *Hodges v. Colson*, 727 F.3d 517, 538 (6th Cir. 2013). And while as a general matter it is "easier [for a petitioner] to show prejudice in the guilty plea context because the [petitioner] need only show a reasonable probability that he would have pleaded differently," *Griffin v. United States*, 330 F.3d 733,

8

737 (6th Cir. 2003), Section 2254(d)(1) applies to the Ohio court of appeals' ruling. Because this Court cannot say that "no fairminded jurist could have come to the result reached by the Ohio Court of Appeals," *Fitzpatrick v. Robinson*, 723 F.3d 624, 636 (6th Cir. 2013), Hudson's ineffective assistance of trial counsel claim fails.

## CONCLUSION

For these reasons, this Court overrules Hudson's Objection (Doc. 15) and adopts the R&R (Doc. 12). Hudson's Petition is dismissed in part and denied in part. His request for an evidentiary hearing (Doc. 10 at 17) is denied. Because Hudson fails to make a substantial showing of the denial of a constitutional right, this Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

                                             s/ *Jack Zouhary*
                                             JACK ZOUHARY
                                             U.S. DISTRICT JUDGE

March 31, 2015